[File No. 6779]

THE NORTHWESTERN MORTGAGE & SECURITY COMPANY, a Corporation, and Providence Washington Insurance Company, a Corporation, Appellants, v. NOEL CONSTRUCTION COMPANY, a Domestic Corporation, and Dr. J. A. Carter, Respondents.

(300 NW 28)

Opinion filed September 25, 1941

*J. E. Hendrickson,* for appellants.

*Cupler, Stambaugh & Tenneson,* for respondents.

CHRISTIANSON, J. This is an appeal from an order setting aside and quashing the service of a summons. The material and undisputed facts are substantially as follows:

On June 30th, 1940, and for many years prior thereto, the defendant, Carter, was a resident of Warwick in Benson county, North Dakota. Shortly prior to June 30th, 1940, he shipped his household goods to his son at Seattle, Washington. On June 30th, 1940, he, to-

gether with his wife, left Warwick in an automobile, intending to drive to points in Minnesota for the purpose of visiting relatives and friends there. It was his intention when he left Warwick on June 30th not to return there but to establish a residence at some place other than in North Dakota. On June 30th, 1940, as the defendant was proceeding on his journey, and while still within the state of North Dakota, he became involved in an automobile collision. As a result of such collision it became necessary to have defendant's automobile repaired and he did not leave North Dakota for several days. Eventually, however, he proceeded upon his journey and visited relatives and friends in Minnesota and thereafter drove to Seattle, Washington, and established his residence there.

On March 1st, 1941, the plaintiff brought this action against the defendants J. A. Carter and the Noel Construction Company, a corporation, seeking to recover damages alleged to have resulted from the automobile collision that occurred on June 30th, 1940. The cause of action against the defendant Carter is predicated upon the alleged negligence of the said Carter in the operation of his automobile.

Service of the summons and complaint in the action was made upon the defendant, Carter, pursuant to chapter 174, Laws 1935, by serving copies thereof upon the Commissioner of Insurance on the 15th day of March, 1941, and by mailing copies of said summons and complaint, on March 19th, 1941, by registered mail, to the defendant J. A. Carter addressed to him at 3216 West 58th Street, Seattle, Washington.

Thereafter, the defendant, Carter, made a special appearance, and so appearing objected to the court's jurisdiction over his person, asserted that the attempted service of the summons upon him was null and void, and asked that such service be set aside and quashed. After hearing, the trial court made an order to the effect "that the attempted service of the summons and complaint . . . upon the defendant, Dr. J. A. Carter, under the provisions of chapter 174, of the Laws of North Dakota for the year 1935, is null and void; that the court has acquired no jurisdiction of the person of the defendant, Dr. J. A. Carter, by reason of said attempted service, and that said service be, and the same hereby is set aside and quashed." The plaintiffs have appealed from such order.

The sole question involved and presented for determination on this

appeal is whether the service of the summons upon the defendant Carter was valid and conferred jurisdiction over his person. This question in turn involves a construction and application of chapter 174, Laws 1935; for the service that was made, or attempted to be made, is authorized only in cases which fall within the purview of that statute.

Said chapter 174, Laws 1935, provides: "The use and operation by a nonresident or his agent of a motor vehicle upon and over the highways of the State of North Dakota, shall be deemed an appointment by such nonresident of the Commissioner of Insurance of the State of North Dakota, to be his true and lawful attorney upon whom may be served all legal processes in any action or proceeding against him growing out of such use or operation of a motor vehicle over the highways of this state, resulting in damages or loss to person or property, and said use or operation shall be a signification of his agreement that any such process in any action against him which is so served, shall be of the same legal force and validity as if served upon him personally. Service of such process shall be made by serving a copy thereof upon the Commissioner of Insurance or by filing such copy in his office, together with payment of a fee of $2.00 and such service shall be sufficient service upon the said nonresident; provided, that notice of such service and a copy of the process are within ten days thereafter sent by registered mail by the plaintiff to the defendant at his last known address and return card requested and that the plaintiff's affidavit of compliance with the provisions of this act are attached to the summons"

It will be noted that the statute applies only to *nonresidents*. It does not apply where the person to be served with process is a resident of the state. It is "the use and operation by a *nonresident or his agent* of a motor vehicle upon and over the highways of the state," which the statute says "shall be deemed an appointment by such nonresident of the Commissioner of Insurance of the state of North Dakota to be his true and lawful attorney upon whom may be served all legal processes in any action or proceeding against him growing out of such use or operation of a motor vehicle over the highways of this state, resulting in damages or loss to person or property."

The question for determination on this appeal therefore resolves to this: Was the defendant Carter a nonresident at the time the automobile collision occurred on June 30th, 1940? If at that time he were

still a resident of the state of North Dakota, then the service attempted to be made was not authorized by law. The trial court ruled that at the time of the collision the defendant Carter was not a nonresident, but was still a resident of this state, and that consequently the attempted service upon him was a mere nullity, and, hence, should be set aside.

The trial court decided correctly. The laws of this state (Comp. Laws 1913, § 14), provide:

"In determining the place of residence the following rules are to be observed:

"1. It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose;

"2. There can be only one residence;

"3. A residence cannot be lost until another is gained;

.    .    .    .    .    .

"7. The residence can be changed only by the union of act and intent."

The term "residence" as employed by the Legislature in this statute is synonymous with "domicil." Enderlin v. Pontiac Twp. 62 ND 105, 114, 242 NW 117, 121; 1 Beale, Conflict of Laws, p 110, note 7. This statute did not create any new rule or principle, it merely adopted and embodied into a statute, rules that had been adopted, recognized and applied quite generally throughout this country. Jacobs, Domicil, §§ 78 et seq.; 1 Wharton, Conflict of Laws, 3d ed pp 77, 118–121; 1 Beale, Conflict of Laws, pp 105, 122, 123, 136, 181, 182; Kennan, Residence & Domicile, pp 209–245; Am. Law Inst. Restatement, Conflict of Laws, pp 17 et seq.; 17 Am Jur pp 599–610, Domicil; 19 CJ pp 401–404, 422–424; Gardner v. Board of Education, 5 Dak 259, 38 NW 433; Bulkley v. Williamstown, 3 Gray (Mass) 493; annotations: 40 LRA(NS) 991; 5 ALR 296; 16 ALR 1298; 82 ALR 982. See also Dicey, Conflict of Laws (American notes by J. B. Moore) pp 94–111.

It is a fundamental principle of the law of domicil that every person at all times has one domicil, and that no person has more than one domicil at a time. 17 Am Jur 591, Domicil; Am Law Inst Restate--

ment, Conflict of Laws, § 11; 1 Beale, Conflict of Laws, pp 122, 123; Williamson v. Osenton, 232 US 619, 58 L ed 758, 34 S Ct 442.

"A domicil once established continues until it is superseded by a new domicil." Am Law Inst Restatement, Conflict of Laws, p 47, § 23. See also 1 Beale, Conflict of Laws, pp 181, 182.

Inasmuch as a person must always have a domicil somewhere, and can have only one domicil at any one time, and a domicil once established continues until another is gained (Comp. Laws 1913, § 14), it necessarily follows that "a domicil once existing cannot be lost by mere abandonment even when coupled with the intent to acquire a new one, but continues until a new one is in fact gained. To effect the abandonment of one's domicil, there must be choice of a new domicil, actual residence in the place chosen, and intent that it be the principal and permanent residence." 17 Am Jur pp 602, 603, Domicil; McEwen v. McEwen, 50 ND 662, 197 NW 862; Am Law Inst Restatement, Conflict of Laws, pp 32–37, §§ 15, 16, 18; 1 Beale, Conflict of Laws, pp 134, 136, 142, 151.

"In every case of change of domicil there are three essential elements which must concur, viz.:

"*First.* A definite abandonment of the former domicil.

"*Second.* Actual removal to, and physical presence in the new domicil.

"*Third.* A bona fide intention to change and to remain in the new domicil permanently or for an indefinite time. Nothing is better settled in the law of domicil than that every change must be facto et animo—in fact and intent. It is also elementary that every man must have a domicil somewhere, that the presumption is against a change of domicil and that the burden of proof rests upon the one alleging a change of domicil." Kennan, Residence & Domicile, § 92; State ex rel. Sathre v. Moodie, 65 ND 340, 355, 258 NW 558, 564.

It is obvious that under these rules the domicil of one who is on his way "from an old to a new home continues to be the old domicil until the new one is reached." 17 Am Jur pp 609, 610, Domicil; 1 Beale, Conflict of Laws, pp 136, 181–182; Bulkley v. Williamstown, 3 Gray (Mass) 493, supra; Kennan, Residence & Domicile, pp 224–229, 246.

In this case it is conceded that the defendant, Carter, had acquired and for many years had maintained, a domicil in this state. At the

time of the automobile collision in question here he was on his way out of the state with the intention to establish a domicil elsewhere. But he had not acquired a new domicil at any other place. He could not remain a moment without a domicil somewhere. 1 Beale, Conflict of Laws, p 181. He could not lose the domicil which he had in this state until he gained one elsewhere. Comp Laws 1913, § 14. Not having gained a domicil elsewhere, the domicil which he had acquired in this state still continued. At the time of the collision his domicil or legal residence was in this state. Bulkley v. Williamstown, 3 Gray (Mass) 493, supra; Ballinger v. Lantier, 15 Kan 608; Barhydt v. Cross, 156 Iowa 271, 136 NW 525, 40 LRA(NS) 986, Ann Cas 1915C 792; 1 Beale, Conflict of Laws, pp 136–137, 181–182; Kennan, Residence & Domicile, pp 227–235, 246–255, 651. He was not a nonresident, and the service of process attempted to be made upon him under the provisions of chapter 174, Laws 1935, was a nullity. The trial court was correct in ordering that such service be set aside.

Order affirmed.

BURR, Ch. J., and MORRIS, BURKE, and NUESSLE, JJ., concur.