Marjorie B. MANGENE and Robert Mangene, her husband, Appellants,

v.

William J. DIAMOND.

No. 11693.

United States Court of Appeals Third Circuit.

Argued Dec. 6, 1955.

Decided Jan. 24, 1956.

Herbert A. Barton, Philadelphia, Pa. (Swartz, Campbell & Henry, Philadelphia, Pa., Michael DeMarco, Malden, Mass., on the brief), for appellants.

Cornelius C. O'Brien, Jr., Philadelphia, Pa. (Albert C. Gekoski, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This suit for personal injuries arising out of the collision of two automobiles was dismissed by the district court as barred by the California statute of limitations.

The uncontradicted facts are contained in an affidavit and deposition of appellee. He stated in his deposition that on May 1, 1951 he owned his own home in Morton, Delaware County, Pennsylvania, where he lived with his wife and children.[1] On that date he was recalled to service with the United States Marine Corps. He was assigned to Camp Pendleton, California and left for that destination the same day. In August, 1951 his wife and children went out to California and joined him. While he and his family were away he rented his home until May, 1952. During the time his wife was with him in California they had discussed staying there but no permanent idea or decision had been reached by them as to this. He never sought a position in his profession there or looked into the possibilities of it. About a month prior to June 2, 1952 his little boy became ill. He knew then that his wife "was going to return home". Around that time he and his wife discussed whether or not they would return to Pennsylvania to live after he was discharged from the service. And said appellee, "Our decision was that when the baby became sick and my wife came back then all thought of staying in California stopped."

On June 2, 1952, appellee while driving his car was involved in the collision which gives rise to this cause. In his deposition he was specifically asked if the decision not to stay on in California after his discharge was arrived at before the accident and his answer was "Yes". He and his wife never at any time before or after the accident decided to remain in California. His wife with the sick boy and the other child left for Pennsylvania the day of the accident. He was discharged from the Marines August 30, 1952 and returned to Pennsylvania within a week. During the time he was in California he retained his Pennsylvania driver's license. He bought the car which was in the accident while in California and with reference to its California license plates and the giving of his California address in obtaining them testified, "It was just almost automatic when I bought the car * * *—I bought the license plates at the same time, or paid the fee for the license plates at the same time." The plates were attached by the dealer and were never renewed. During the time appellee was in service he received his mail other than that directed to his service address at his mother-in-law's house, East Lansdowne, Delaware County, Pennsylvania, which is about six miles from Morton. Prior to going to California he had been registered to vote in Pennsylvania. He had never so registered in California. He was certified as a public accountant in Pennsylvania alone. In his affidavit he says that "At no time did * * * [he] * * * intend to establish or make his home in California. He was stationed in California and stayed there only because he was forced to do so under military orders."

Our sole concern is whether at the time of the accident, under the above facts, appellee was a non-resident motorist of California within the meaning of the California Motor Vehicle Code, Section 404. We are not dealing with any confusion between domicile and residence. We start with the proposition that appellee, despite the fact that his home was in Pennsylvania and he was in California entirely because of service orders, could have obtained such residency had he so intended. But from the ac-

---

1. Prior to that time he had always made his home in Delaware County, Pennsylvania.

cepted facts he never intended to become a resident of California and so, under the law of that state which rules this question, his status as a non-resident never changed.

California law makes the question of intent vitally important. Appellant argues that there is some lack of clarity in the decisions of that state between residence and domicile. We find none but if there were that would not touch what is a primary requisite of residency under California's Motor Vehicle Code, namely, the intention to remain long enough to eliminate classification of the stay as temporary. In this case appellee never had the intention of remaining one moment longer in California than he was compelled to do by reason of his service commitment. His stay there was merely for the period he was obligated to stay under his duty assignment. It was never his purpose to remain on so that, as was said in Briggs v. Superior Court of Alameda County, 1947, 81 Cal.App.2d 240, 183 P.2d 758, 763, his " * * * presence in the state cannot be classified as merely temporary." After considering whether he and his folks should stay he reached the definite decision not to continue on in California after his discharge when he, for the first time since his advent there, would be free to leave that state. In the Berger opinion, Berger v. Superior Court, 1947, 79 Cal.App. 2d 425, 179 P.2d 600, 602, the principle laid down that "The mere fact that a person coming from another state is stationed at a military camp in California as a member of the armed forces does not make him a resident of California" has never been contradicted. It is today sound California law and it was appellee's exact position at the time of the involved accident. Johnston v. Benton, 73 Cal.App. 565, 569, 239 P. 60, 62, presents the full picture of the service man based away from home with the court saying: "True, the fact of his being on military duty does not preclude him, if he so desires, from establishing residence where he is stationed * * * ; but the uncontradicted evidence here is that such was not Benton's desire—that he never had any intention of doing so. The question of whether a person has changed his residence from one place to another must depend largely upon his intention, and that intention is often manifested by the purpose that impelled him in taking up a new place of abode." In DePier v. Maddox, 1948, 87 Cal.App.2d 460, 197 P.2d 87, the service man had filed an affidavit in the case that he intended to make his home in California. He and his wife had no other home at the time of the accident or for two years thereafter during which period he was not stationed in California but was overseas. The court largely on a finding that he intended to be a California resident, held that he was just that under the state's vehicle code.

Appellant urges Suit v. Shailer, D.C. Md.1937, 18 F.Supp. 568, as being to the contrary. If it were it would hardly be of great consequence in the light of the California decisions but it is not. There the wife of a naval officer had resided with her husband at his Annapolis station for three years prior to the accident. The husband was a career officer and had no other residence than in Annapolis. The facts were quite similar to those in the DePier decision, supra. The court, comparably to DePier, held that the wife was a Maryland resident. Several opinions from jurisdictions other than California cited by appellant do not in any way touch the vital element of intention in connection with establishing California residency under the motor vehicle law of that state. The district court properly held that at the time of the accident, according to appellee's uncontradicted affidavit and deposition, he was a non-resident motorist of California.

■ During the full year of the running of the one year California statute of limitations appellee was available for service of process. For the first three months he was still in the Marines and could have been personally served in California irrespective of whether he was a resident or a non-resident. Thereafter he was available by the statutory mail

method of service. Since this action was commenced after the California statute had expired it is prohibited by the applicable Pennsylvania Borrowing Act, 12 P.S. § 39, Act of June 26, 1895, P.L. 375 Section 1, which provides that "When a cause of action has been fully barred by the laws of the state or country in which it arose, such bar shall be a complete defense to an action thereon brought in any of the courts of this commonwealth." See State Compensation Ins. Fund v. Proctor & Schwartz, D.C.E.D.Pa.1952, 102 F.Supp. 451, 452.

The order of the district court will be affirmed.